The next case on the call of the docket is Agenda No. 21, Case No. 128354, Grant Nighhammer v. Paula Basta. Mr. Griffiths? Good morning, Your Honors, Counsel. May it please the Court, Assistant Attorney General Carson Griffiths, on behalf of Paula Basta, Director of the Illinois Department on Aging. This Court should reinstate the Circuit Court's dismissal of Nighhammer's mandamus action because he failed to allege that the Northwestern Illinois Area Agency on Aging, or as I'll refer to it, NIA, had a clear right to a hearing on its petition submitted to the Department or that the Department had a clear duty to promulgate procedural rules governing any such hearing under the Illinois Administrative Procedure Act. For an agency to have a duty to hold hearings or to promulgate procedural rules under the APA, a dispute must present a contested case, which is defined in relevant part as an adjudicatory proceeding in which the individual legal rights, duties, or privileges of a party are required by law to be determined by an agency only after an opportunity for a hearing. Every court to have interpreted that definition prior to the Second District's opinion here held that the phrase required by law means that a source of law outside the APA itself must endow a party with a right to a hearing. It must require one. And that is consistent with the plain meaning of the phrase required by law because the APA itself doesn't afford parties substantive rights to a hearing. So courts have looked to other statutes, administrative regulations, or the Due Process Clause to determine if a dispute presents a contested case. And so applying that definition here, the question is whether NIA had a clear right to a hearing under any statute, any regulation, or the Due Process Clause. And I would like to address each of those in turn. So turning first to the statutory question. No Illinois or federal statute afforded NIA a right to a hearing on these petitions. The first petition, which alleged that the department withheld grant funding, there was nothing in the Illinois Act on the Aging or the Adult Protective Services Act, the two relevant Illinois statutes here, that gave NIA a right to a hearing on whether grant funds were withheld under those statutes. And although the department has a right, or excuse me, a duty to provide a hearing under the federal Older Americans Act, this mandamus complaint and the exhibits to it failed to plead sufficient facts showing that any Older Americans Act funding was withheld. So the first petition itself only complained about this withholding of so-called other funding that it also expressly distinguished from federal Older Americans Act funding. And it also talked about the cancellation of an Adult Protective Services grant, but that grant arises under the Adult Protective Services Act, which is a state statute, not the federal Older Americans Act. Mr. Griffiths, does the agency's obligation to establish procedural rules under Section 10-5 of the Procedure Act depend on whether the party has presented a contested case? It does, Your Honor. Or is there an independent statutory duty to establish a procedural hearing? The APA only requires an agency to promulgate procedural rules for contested case hearings. So in the context of this mandamus action, in order to show that NIA had a clear right to relief, it has to show that it had a contested case and that the department was required to promulgate procedural rules that would apply to it. So to answer your question, yes, it only applies when there's a contested case triggered. And to the extent that NIA might allege that it had some sort of hypothetical contested case in the future to which it would want procedural rules, that's not fled in the complaint and that's entirely speculative. So turning back to the question of whether the federal Older Americans Act applied here, the mandamus complaint itself contained a single allegation that read, it is believed that the department withheld OAA funding from NIA. But pleading on information and belief doesn't generally satisfy fact pleading. And this is not a circumstance where pleading on information and belief was permissible, because all the information necessary to plead specific facts were in Nyhammer and NIA's possession. As the executive director of NIA, he should have known exactly how much funding it was receiving every year. The department's intrastate funding formula, which calculates how much funding goes to each area in each area agency on aging, is set forth in the department's regulations. It's also specified in the state plans that the department submits to the federal Department of Health and Human Services and it's approved. So if the number in the state plan and the intrastate funding formula didn't match what NIA actually received, Nyhammer would have known and should have pled those facts. So excusing this vague pleading is not appropriate here, because there's no need to plead on information and belief. And again, the statutory question as applied to the second petition regarding service provider recommendations. There's no right to a hearing under the Adult Protective Services Act when service provider recommendations are rejected. There's only really one hearing provision in that statute and it deals with placement of a caregiver on the Adult Protective Services Registry, which is far afield from what we have here. So with no right under a statute, the next question is whether NIA had a right under any department regulation. But the regulations in effect at the time these petitions were submitted to the department provided for hearings in only two circumstances. First, when the department disapproved of an area agency on aging's area plan or it sought to withdraw an entity's designation as an area agency on aging. And again, we don't have either of those circumstances here. So the first petition did not allege that the department disapproved of NIA's area plan. To the contrary, it expressly recognized that the department approved that area plan and that's at page C14 of the record. And it mentioned the withdrawal of NIA's status as a regional administrative agency under the Adult Protective Services Act. But that is a separate designation from its designation as an area agency on aging under the Older Americans Act. And again, the department's regulations only provided for a hearing when the designation as an area agency on aging was withdrawn. So that's not what we have here. And regarding the rejection of service provider recommendations, the relevant regulations at the time that this dispute arose did not provide a right for a hearing when an area agency on aging's service provider recommendations were rejected. During the pending of this action, the department did promulgate a new regulation that will afford area agencies on aging a hearing when its recommendation to designate a service provider is rejected. But for all the reasons stated in the department's brief, those should not apply retroactively to this decision. I would also like to point out that Nyhammer has forfeited any argument that those regulations should apply retroactively because the department argued retroactivity in its opening brief. But rather than writing a response brief that addressed that argument, Nyhammer elected to stand on his answer to the petition for leave to appeal, which contains no mention of retroactivity or explanation of why those new regulations should apply retroactively. And again, even if they could be construed as retroactive, this is a mandamus action that requires a clear right to relief, and Nyhammer had none under the new regulations because the second petition was submitted outside the time required by those regulations for a hearing. So the department promulgated administrative rules and procedures for the hearing as well? For that regulation is 89 Illinois Administrative Code 230.470A, where it expressly adopts Article 10 of the Administrative Procedure Act. So the final question is whether NIA had a constitutional right to a hearing. But in order to have a due process property interest protected by that clause, Nyhammer had to allege facts showing that NIA had a legitimate claim of entitlement to either the grant funding or the acceptance of its provider recommendations. In other words, he had to point to specific criteria that limited the department's discretion such that NIA could not be denied grant funding or its provider recommendations if those conditions were met. And as for grant funds, again, we're dealing with an allegation about this unspecified other funding. We don't know the source of it. So there's no way for this court to determine whether it was awarded under any statute that limited the department's discretion in awarding those grant funds. And as for the Adult Protective Services grant, the statute gives the department discretion to contract with or fund regional administrative agencies, but it doesn't place limits on the department's discretion. And also the grant agreement, I would note, cited by then Director Holton in his letter canceling it, provided that it could be canceled at any time without cause. So NIA had no expectation, legitimate claim of entitlement to those grant funds. Counsel, did the appellate court enter the writ of mandamus that the agency was seeking? Did the appellate court? Yes. Yes, Your Honor, effectively. And so what's your understanding of what that mandate? My understanding of what the appellate court's holding is, is that rather than remanding this action to the circuit court for further proceedings, this action would need to go back to the department and the department would have to hold hearings on those two petitions. I believe that that's the concluding paragraph of the appellate court's opinion. So that is also the request for relief in the mandamus complaint, to compel the department to hold hearings. And in doing that, the appellate court really short-circuited the entire litigation process in the circuit court, even though that's where this case initiated. The department was deprived of the opportunity to even answer the complaint before judgment was entered against it effectively. But this court doesn't need to reach that question, of course, if it decides that there is no viable claim for mandamus in the complaint. It can affirm or, excuse me, reinstate the circuit court's judgment and reverse the appellate court's here. So we would ask first that this court consider whether there is a viable claim for mandamus. And only if there are sufficient facts alleged in there for that extraordinary relief, then in that circumstance, in the alternative, we would ask that the case go back to the circuit court for further proceedings. So that's our alternative argument, Justice Overstreet. So turning back to the due process question, and as the due process analysis applied to the provider recommendations, briefly, the department has discretion to decide whether to accept or reject provider recommendations. The Adult Protective Services Act just says that they need the department's prior approval, but it doesn't say what that approval – it doesn't limit that approval in any way. It just says that the department should either give it or withhold it. And the department's own regulations expressly reserved the right to reject any provider recommendations, which is comparable to the contracting process in PolyVend, this court's decision in PolyVend, where the government in that case reserved the right to reject any and all bids. And the result of that reservation was that this court held there's no protected procedural due process right. You don't have a claim of entitlement if the department – if the agency has the right to reject bids. And that's the same situation we have here, where the department has reserved its right to reject provider recommendations. And so without a right, clear right, to a hearing under any statute, any regulation, or the Constitution, this court should reverse the appellate court's decision and reinstate the circuit court's dismissal of this action. Or, in the alternative, should this court determine that any allegations of the complaint are sufficient to state a cause of action for mandamus, the department would ask that this court remand to the circuit court for the proceedings. And I'm happy to answer any other questions Your Honors may have. All right. Thank you, Mr. Gray. Thank you. Mr. Scordato. Good morning. May it please the court, my name is Tim Scordato. I'm counsel for Plaintiff Appellee Grant Nyhammer. I'll be referring to him as Nya. He is the executive director of the Northwestern Illinois Area Agency on Aging. I'll be referring to the defendant, Paul Abasta, as the department. I'm here to ask that the Supreme Court affirm the appellate court's decision for three reasons. First of all, because it's what's preventing the Department on Aging from continuing to deny access to administrative hearings and shut down the administrative hearing process, not just for Nya, but for all the 2.3 million older adults in Illinois. Second reason is that it's the public policy of Illinois to have easy access to administrative hearings. And the third reason is that despite the department concealing vital information from the appellate court, the appellate court saw through this and decided that there needs to be some sort of accountability. The purpose of having these administrative rules is to ensure accountability for the state agencies. Is there a clear right to it here? A clear right to a hearing? Yes. We cited seven different provisions in our initial petition that state a clear right to a hearing, and we cited five provisions in our APS or second position that state a clear right to a hearing. First, in regard to shutting down the hearing process, the department's arguments that they presented today are really just a pretext for continuing to shut down the administrative hearing process, because the department used only four words to deny our petitions, not a contested case. The department didn't go into the reasons that we gave for why we have to have a hearing or why we're entitled to a hearing. The department only gave four words, not a contested case. This is, frankly, illogical, because what is a contested case? It states this in the Procedure Act. It states that a contested case is an adjudicatory proceeding. So, in other words, the department is stating that we don't have a right to a hearing because we didn't present them with an adjudicatory proceeding. This doesn't make any sense. This is the department's duty to present an adjudicatory proceeding. It's not the duty of NIA. In regards to shutting down the hearing process, we know that they've been shutting down the hearing process. It's not just an adjudicatory proceeding. I mean, you're just saying you could file a petition to get a hearing for anything. I mean, the definition goes on, in which the individual legal rights, duties, or privileges of a party are required by law to be determined by an agency only after an opportunity for a hearing, correct? That's the correct definition. So, I mean, the issue, and the cases that talk about this talk about what's required by law, and then they have to point to a statute, a regulation, or the Constitution. You can't just file a petition and ask for a hearing. I mean, you're talking in generalities, and let's get to specifics of where you have made out a case that it's required by law. So you're correct in the sense that there has to be some sort of requirement in law that entitles us to a hearing, and we did cite those provisions. But I'm stating that the definition of contested case is not a mechanism that the Department of Aging can use to deny us hearings. They actually have to have findings of fact and conclusions of law tied to those findings of fact to deny us a hearing. That's correct. I thought that was to have a hearing, and then you have conclusions of fact and law after you have the hearing. In order for the department to administer a final administrative decision, there has to be findings of fact and conclusions of law. It states this explicitly in the Procedure Act. You're talking, at least at this point in time, and you'll get more specific, but at least at this point in time you're talking in generalities and basically in terms of equity. And when I read the appellate court opinion, I see that argument. I see that argument coming forth because nowhere do I see in this appellate court opinion a detailed analysis of what a contested case is when we get to this required by law element. There's nothing in there about it. That's correct. The department didn't say anything defining what a contested case was or going into the arguments of the provisions that NIA cited. They merely just said that we didn't present a contested case. So as Justice McLaren of the appellate court correctly stated, there has to be findings of fact and conclusions of law in order for this to be reviewable by the circuit courts. Otherwise, what is the court supposed to review? There's no facts other than the facts that have already been presented in our complaint and in the petitions. We cited these seven provisions in the initial petition and these five provisions in the APS petition. For example, in the APS petition, we cited the provision that the department cannot withhold our designation of adult protective service providers unreasonably. Mr. Spodato, doesn't the Administrative Procedure Act define what a contested case is as a judicatory proceeding, not including rate making and rule making and things like that? That's correct. And it also provides, as you said, that there is in 10-50 decisions and orders, it has to be in writing stated in the record, final decision shall include findings of fact and conclusions of law separately stated? That's correct. You said that the department has been trying to diminish the numbers of contested cases they're doing. How do you allege that? I mean, is that a fact? Well, we allege this. It's a fact that we allege in the complaint and it's alleged in the petitions. Based on the fact that they're a $1 billion state agency and they haven't had a hearing in years. This is a FOIA request that we asked the Department on Aging. We said, when's the last time that you've had or have you had a hearing in the last four years? And they said, no. Other than two programs, the community care program and the adult protective service program, the Department on Aging hasn't had a hearing in years. This is something that the department has never contested. And if the department is allowed to continue to deny hearings based on this contested case excuse, it makes it so the department can never have any accountability.  The circuit court cannot review a denial if all the department gives them is not a contested case. Secondly, on top of that, the department stated that in our initial petition, that they're not administering a final administrative decision. So they denied us a hearing and then they told us that this is not a final administrative decision. But they didn't tell us what else we could do. So what is it that we were supposed to do? We came and we filed a mandamus. That's what we did. Is that the problem here with the mandamus action? Because mandamus requires certain very specific elements before you can get a mandamus out. Correct. So the mandamus is hard and it's where you have an absolute right to something, right? And here, did that exist? It does exist. So the mandamus states that there has to be a clear right by the plaintiff to the remedy and that there has to be a clear duty by the Department on Aging and there has to be a clear authority by the Department on Aging to give us a hearing. There is this clear right, there is this clear duty, and there is this clear authority because these are essentially, as the Court has stated and the Supreme Court has stated, that these are essentially satisfied when the statute gives mandatory language such as the word shall. So, for example, just to cite a couple of more provisions under which we asked for a hearing, we said that the department will afford an opportunity for a hearing upon request to any area agency on aging submitting a plan under the Older Americans Act. This is 42 U.S.C. 3027. We are an area agency on aging and we are submitting an area plan. We were submitting an area plan amendment at the time that we requested a hearing. This gives us the right to request a hearing and an entitlement to that hearing. Should this case have been remanded to the circuit court rather than the department? Where should it be remanded? The appellate court has the right and the authority to remand it back to the department because under Illinois Supreme Court Rule 366, the appellate court has all of the authority as the trial court. So if the trial court has the authority to remand it back to the department, which it does, then certainly the appellate court can do that under Rule 366. As I understand your argument, in essence it's saying that there has to be a way, and the legislature doesn't set it out, there has to be a way to review funding decisions made by the agency, correct? That's correct. And you're arguing that the fact that nothing is provided by legislation leaves you with no other remedy except to seek something like mandamus. Is that the only way you can do it? It's possible that we might have been able to file a writ of certiorari, but mandamus action is also a means by doing that. But the mandamus action may be activated even if there are other causes of action or ways that we might bring this case. But this is about the level of funding and funding in general, isn't it? That's correct. And as we said in our brief, the biomedical case, and to contest what the department states about our property interests, yes, there is no right to government funding unless it specifically states that in the statute. But there is a right to contest the way in which that funding is withheld from us. We stated in our complaint and in the petitions that they're withholding this funding from us for an improper purpose, that they're doing this as a result of retaliation for our public advocacy. And we know so because they said so, which we allege in the complaint and in the petition. His argument is that your allegations in the mandamus complaint aren't specific enough to tell us what funding is actually being withheld. That's not the fault of NIAB. They shouldn't be rewarded for the department should not be rewarded for concealing that information from us. We were terminated from the Adult Protective Service Program back in 2014. They didn't tell us why. Then in April of 2019, there was a meeting in Chicago. The Department on Aging told us that they withheld funding from us in retaliation for our advocacy about the manual, about the Adult Protective Services manual. And directly after that, we asked them to investigate this. What is the nature of this funding? What is the quantity of this funding? They refused to investigate. We had no other option but to file an administrative appeal. And that's the purpose of the administrative appeal. It's the public policy to have easy access to administrative appeals in order so the agency can develop these facts and use their expertise so that a plaintiff, whether it be NIA or whether it be an older adult, doesn't have to go through a three-year litigation process as we've done here in order to discover these facts and develop these facts. That's the purpose of having the administrative hearing. And also another reason is to save on judicial resources and judicial economy. If the department continues to be allowed to use the contested case as a reason for denying administrative appeals, then petitioners are going to have to come to the Supreme Court as they have original jurisdiction over mandamus actions or to the circuit court and be involved in a lengthy and expensive and time-consuming lawsuit. Are these hearings, the hearing that you're looking for, basically a discovery tool to find out what funding was actually withheld from you? Yes and no, because we know that funding was withheld from us and we know that they withheld it from us for a retaliatory purpose. However, it's precisely how much funding was withheld from us that needs to be discovered. Or from what source? I mean, it's OAA funds or some other type of funds, right? That's correct, yes. Because if it was OAA funds and you knew it and you had evidence of it, you'd be entitled to a hearing. Under one of our provisions, that's correct. But there is reason to support that it was, in fact, the Older Americans Act. There's nothing in the Act that provides for the statutory right for a hearing, isn't that right? Yeah, I'm sorry, in what Act? There's no right to a statutory hearing, I mean in the statute. In which statute? The statute giving the plaintiff is the burdenary, cannot prove any clear statutory right to a hearing on a contested case, dealing with the authority that your opponent has. So I'm a bit perplexed by the question. We cited 12 reasons why we're entitled to a hearing, seven under the first petition and then five under the second petition. And the Procedure Act itself gives us a right to a hearing. In fact, the Department, I think, is confused or is misinterpreting the Procedure Act because the Procedure Act states that someone can use it to bring about a lawsuit but must do so within two years. So there's a statute of limitations in the Procedure Act itself, in which case somebody has a cause of action and might bring a hearing. So as I mentioned before, it is the public policy of the State of Illinois, under cast need of the Illinois Human Rights Commission, to have this easy access to administrative hearings, to save on those judicial resources, to allow the state agency to develop and consider facts and not to force litigants, especially those of limited income, to hire an attorney and to file a lawsuit. This would be devastating for some of our clients who are receiving home-delivered meals. NIA provides hundreds of thousands of dollars, I'm sorry, hundreds of thousands of home-delivered meals to older adults within Illinois. This is not only just necessary for their nutrition. Many of our clients depend on this daily. It's also important for safety checks. These home-delivered meals are delivered daily. This is a safety check. They knock on the door. They make sure that the older adult hasn't fallen, that they're not in need of any sort of assistance. If they're terminated from this program, what happens is that currently there's no viable way for them to file an administrative appeal. And they could be terminated from this program off of something very simple, such as a clerical error on the fault of the Department on Aging. So the gap in providing for a remedy for not funding or changing the funding, taking away funding, is a pretty drastic step, is what you're arguing, correct? And that making their decision unreviewable would lead to absurd results. Yes, I'm arguing the latter point that you bring up, that making these decisions unreviewable, which is what the Department is doing, leads to these absurd results that somebody who really needs these home-delivered meals is terminated from the program and they don't have a means of having an administrative hearing. How many clients do you have in the elderly abuse area that you believe are not having their meals? I'm sorry, say that again? How many people do you project who are not receiving their meals as a result of this funding taking away? Oh, I speculate that there's many. Like I said, there's hundreds of thousands of these meals that we give out. This is a $1 billion state agency of the Department on Aging. There's likely hundreds of these older adults who are terminated from the program but currently just don't have a viable means of vindicating their rights. But am I correct that a different agency, a different entity, was in fact given this grant? I'm sorry, say that again? So the question the Chief has asked, are there hundreds and hundreds of people who are hungry in the northern part of the state because of the action of the state? I think that's the thrust of the question. Are there other agencies that were given grants that were proceeding with that kind of work? Yes. So the Area Agency on Aging is not only responsible for being the public advocate but also responsible for coordinating the system. So we have grantees under us who provide this service. AAA does not provide this service directly. Unless there's any other questions, I realize that my time is up. So I ask that for all the reasons that I've stated, that the Supreme Court affirm the appellate court's decision because it's what's preventing the Department on Aging from continuing to deny administrative hearings and shut down the administrative hearing process, not just denia, but to all the 2.3 million older adults in Illinois. Thank you. Thank you. Mr. Griffiths. Thank you, Madam Chief Justice. First of all, I want to dispel the notion that this case has anything to do with older Americans being deprived of funding or being denied meals. There's nothing in the complaint that alleges that. There is no older adult who is a plaintiff in this case. This is about an entity's request for hearings and a request for mandamus to hold hearings on it. And in that vein also, Justice Carter, I want to address your point regarding these funding decisions being unreviewable. If there is some sort of substantive legal right being violated by some sort of grant funding process, whether that's in the statute or regulation or the due process clause, there would be an opportunity to seek relief. What we're saying here is that NIA, which didn't even challenge the underlying grant award process, it challenged the Department's decision not to hold a hearing on the underlying grant process, is that they have not alleged for purposes of this mandamus action, which they elected to bring, have not shown a clear right to a hearing. So in some circumstance where, say, Older Americans Act funding was withheld, there would be a remedy. There would be a hearing. And I would also note that the notion that the Department can just withhold Older Americans Act funding is very difficult to conceive of because this is a federal program. The Department of Health and Human Services conducts oversight over this program. If the Department isn't following the requirements of its state plan and its interstate funding formula, the federal government can withhold funding from the state, and the Department would not jeopardize that funding for some sort of retaliatory purpose. With the question about is it unreviewable and is there a remedy, many of the recipients of this would have really not the wherewithal to start hiring lawyers or filing lawsuits. They wouldn't have the wherewithal to know how to do all that. So they would just be left with accepting a decision made about funding, correct? Incorrect, Your Honor. Respectfully, the Department's regulations expressly provide for a grievance process by which older adults can seek a hearing with the Department if some services are being deprived or withheld. So there is a process by which older adults, and, again, these older adults may not be capable of filing these on their own, but the Department or area agencies on aging can provide them assistance with that. That's not what we have here, though. Who can provide assistance? Who does that? It would be the area agency on aging or potentially the Department itself if it was, you know, something as simple as helping filling out the petition or conducting a hearing, something along those lines. But, again, I want to go back to this mandamus complaint that's before this Court. There is nothing in there to suggest that older adults are being deprived of services, and I reject any suggestion that they are. Do you provide a form of what a petition looks like that can be filled out? Is that a form petition? I'm not sure, Your Honor. I didn't look into that before this argument, again, because that's not an allegation in this case. So I did not prepare to look as to whether the Department provides, in a hypothetical circumstance where an older adult has a grievance, what they do to help that. But it's possible. Must the Department issue findings of fact and conclusions of law when denying a hearing? No, Your Honor. And I would direct you to Section 1050 of the APA. There it says, A final decision or order adverse to a party in a contested case shall be in writing and stated in the record, and a final decision shall include finding of facts and conclusions of law specifically stated. So, again, we have a circumstance where only if a dispute presents a contested case, that duty to issue findings of fact, conclusions of law, explanations, is triggered. And I would also direct Your Honor to the Schempf case cited in our brief in Argument 2 where the First District But a contested case, that means that, is there any review of how grants are given to people? Is there any accountability from the Department? If one can't, as a grantee, contest. Again, Your Honor, as I said in response to Justice Carter's question, if there is some statutory provision entitling either NIA or an older adult to some sort of funding that is violated by the Department, yes, there would be a legal right to seek relief for that. Whether a declaratory judgment, potentially mandamus, I don't know. That's all hypothetical. It's not administrative. That's all court. The Department. I know. I understand that. But why doesn't the Department have something so that people don't have to go to court? That's incorrect, Your Honor. The Department does have something. And as I just laid out, the Department has a grievance process for older adults. It also has hearing rules for area agencies on aging. So if the Department denies their area plan, they can seek a hearing. If the Department seeks to withdraw their designation as an area agency on aging, saying, NIA, you're no longer going to be the area agency on aging, NIA can ask for a hearing on that. So there are procedures. There's just not procedures for whatever this complaint alleges, which is some sort of unspecified other funding. We don't know the source of it. And also, with respect to the notion that NIA lacked information, it knew enough about this other funding to say it's not Older Americans Act funding. It was withheld in 2014 to 2015, and it was $3.79 million. So NIA had some information about what this other funding allegedly was, but didn't come forth with it. And we're faced with a complaint, again, from Mandamus that requires a clear right to relief. Could you help me understand some real basic facts here? Sure. The Department is mandated by the statute to establish, design, and manage a protective services program to assist eligible adult victims of elder abuse, et cetera, right? So the Department is mandated to establish, design, and manage a protective services program. Then what happens next is the Department designated area agencies as these regional administrative agencies, right? For at some point, the Department chose NIA to be that regional administrative agency for planning and services, as it must to someone under the statute. And then later chose not to have NIA function in that role. Was a different agency designated by the Department to perform that mandated service? Yes, the Department itself. If you look at the statute, what it says is that the Department may deem an area agency on aging unwilling or unable to complete these services, and the Department itself or some other designated agency may serve as the regional administrative agency. And that's exactly what then-Director Holton's letter said, is that from now until we give you the adult protective services grant back, the Department will serve as the RAA for this area. That's where the crux is right now. In the past, there was a designation of an entity to perform these services, and the Department decided not to do that but to do the work of providing these services and these grants and this food and these services to older Americans. Is that where we are? Somewhat, Your Honor. I just would note that, yeah, the Adult Protective Services Act doesn't deal with food. It deals with allegations of elder abuse, neglect, financial exploitation, things like that. But, yes, the complaint in the second petition or, I'm sorry, the first petition, one of the complaints was that you withheld this Adult Protective Services Act grant, which effectively designated us as a regional administrative agency, not as an older – I'm sorry, not as an area agency on aging, which is a separate designation. And that's reflected in the Adult Protective Services Act because AAAs can serve as RAAs, but they don't have to be. And the Department – Does the Department itself give out these grants now rather than going through the agency? They come from the State. The Adult Protective Services grant comes from appropriations from the legislature. And now, instead of going through NIA or some other entity, now the Department, the State itself, actually administers the program. No, NIA is the RAA once again. It's come back into the fold as the RAA, and that's not clear from the record. But the second petition – Let's say where we are in this case. Where we are. That's what I'm saying. Yes. So there's this money. How is the money going to get to people who need it? The Department chose NIA to do that. Then the Department chose to take that authority away from them and to keep it to itself. Is that what happened here? Yes, in that 2014-2015 period, yes. And then the Department undertook those services that NIA was performing at that time and did those itself, directly. NIA is saying that the Department, when it made that decision to no longer use these regional administrative agencies but to administer the program themselves, that when they made that decision, that's what required a hearing. Is that what was happening here? Yes, that's part of one petition. So the first petition, which is about grant funding, yes, Justice Tice, is about this Adult Protective Services grant, and also it brings up this other funding. But the Adult Protective Services grant is awarded under a statute that gives the Department discretion to contract or fund with these RAAs. It gives the Department discretion to step in for the RAAs if it deems them unwilling or unable to perform those services. And the grant agreement cited by – oh, I apologize. My time has expired. And nobody's going hungry because of that decision? May I answer? Yes. Nobody's going hungry. I will assure you of that. Thank you, Mr. Griffith. Thank you, Your Honors. Case number 128354, Grant Neihammer v. Paul Voska, will be taken under advisement by this Court, known as Agenda Number 21. Thank you, Mr. Cordato, for your arguments, and Mr. Carson Griffith, to yours.